UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID E. SCHAK,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN[1], Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | NO:  12-CV-0617-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 14, 16).  Plaintiff is represented by Maureen J. Rosette and Dana C. Madsen.   Defendant is represented by Catherine Escobar.  The Court has

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits and supplemental security income on December 5, 2011, with an alleged onset date of September 1, 2011. Tr. 213-19, 220-228. His applications were initially denied, as was his request for reconsideration.  Tr. 134-37, 141-43, 151-53. Plaintiff filed a request for a hearing and appeared with an attorney at a hearing before an administrative law judge ("ALJ") on August 1, 2012. Tr. 154-55, 36-83.

The ALJ issued a decision on August 22, 2012. Tr. 20-30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2011, the alleged onset date. Tr. 22. At step two, the ALJ found that Plaintiff had severe medical impairments, *id.*, but at step three, the ALJ determined

that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Tr. 23. The ALJ then determined that Plaintiff had residual functional capacity to perform a wide range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). At step four, the ALJ determined that the claimant was unable to perform any past relevant work. Tr. 29. However, because Plaintiff had the residual capacity to perform work existing in significant numbers in the national economy in representative occupations such as cashier and hand packager, the ALJ found that Plaintiff was not disabled at step five. Tr. 29-30.

On November 2, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6, 20 C.F.R. § 404.981.

## ISSUES

Plaintiff identifies three issues for review: (1) whether the ALJ set forth specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinion of John Arnold, PhD, who completed a psychological evaluation of Plaintiff; (2) whether the ALJ properly rejected Plaintiff's symptom testimony regarding his impairments; and (3) whether the ALJ's failure to include accepted limitations from Allen D. Bostwick, PhD, in the hypothetical question to the vocational expert warrants remand. ECF No. 14 at 13-16.

## DISCUSSION

**A. Whether the ALJ Properly Rejected Dr. Arnold's Opinion**

Plaintiff contends that he was more limited from a psychological standpoint than what was determined by the ALJ. ECF No. 14 at 13. Specifically, he contends that the ALJ improperly rejected the opinion of John Arnold, Ph.D, in determining claimant's residual capacity because the ALJ did not set forth specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Arnold's opinion. *Id.* at 13-14.

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted). A physician's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss,* 427 F.3d at 1217; *see also Buckner–Larkin v. Astrue,* 450 Fed. Appx. 626 (9th Cir. 2011) ("if the ALJ determines that the subjective complaints of

the claimant are not credible, that is sufficient reason for discounting a physician's opinion that is based on these complaints.") *citing Bray,* 554 F.3d 1219.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (*citing Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales,* 402 U.S. 389, 400 (1971). If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984).

Here, two psychologists, Drs. Arnold and Bostwick, evaluated and reported on Plaintiff's psychological function. Dr. Bostwick reported that Plaintiff "presents with no new, severe psychopathology and thus no new psychological limitations or restrictions to gainful full time employment from a psychological standpoint." Tr. 351. The ALJ gave less weight to Dr. Arnold's conclusions:

> In July 2012, John Arnold, Ph.D, conducted a psychological evaluation of the claimant and assessed him with a pain disorder associated with both physical factors and a general medical condition; major depressive disorder, single episode, moderate; and rule out learning disorder, not otherwise specified. In his report findings, Dr. Arnold noted that there were no records for review prior to the evaluation, and he was unable to administer psychological testing instruments due to the claimant's inability to comprehend the test questions. In this case, Dr. Arnold relied, in great part,

>upon the subjective allegations of the claimant, and his diagnostic interview only, in arriving at his conclusions, and therefore, little weight has been afforded to those findings and conclusions based on a limited, one-time interview.

Tr. 27-28 (internal citations omitted). In contrast, the ALJ afforded greater weight to Dr. Bostwick's report:

>Dr. Bostwick documented that the claimant's "cognitive examination results [were] compromised by his short abrasive responses, diminished persistence, and little attempt to present himself in a socially appropriate manner." However, Dr. Bostwick did opine that the claimant "is probably functioning within the low Average range of general intellectual ability," and "when [the claimant] applies himself more his attention an concentration are low Average, his memory is mildly impaired, and his comprehension and retention of verbal information is within functional limits." Dr. Bostwick was unable to assess the claimant's higher-level reasoning and problem solving abilities, reportedly due to diminished effort on the part of claimant. Dr. Bostwick further reported that the claimant may be mildly limited in social functioning due to his "self-defeating" personality traits, and although he exhibits variable attention and concentration, pace, and persistence, Dr. Bostwick was of the opinion that the claimant generally ranges from low Average to moderately impaired. However, Dr. Bostwick attributed these traits as a matter of choice, rather than "deleterious effects from a mental health disorder." He noted that, despite the claimant's hearing impairment and reported reading and writing impairments, the claimant presented with no new, severe psychopathology or psychological limitations or restrictions that would prevent gainful, fulltime employment from a psychological standpoint. The undersigned concurs with the findings of Dr. Bostwick to the extent that it supports the above residual functional capacity assessment.

Tr. at 26 (internal citations omitted).

Plaintiff points out that the ALJ found that Dr. Arnold relied primarily on Plaintiff's subjective complaints, but gave significant weight to Dr. Bostwick's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

opinion, which likewise relied primarily on Plaintiff's subjective complaints. ECF No. 14 at 14. However, as Defendant contends, both psychologists performed clinical examinations and interviews and came to different conclusions regarding Plaintiff's functioning and impairment. The ALJ accordingly had to resolve a conflict between the two opinions. Given a choice between the findings of two psychologists who had interviewed Plaintiff, the ALJ gave greater weight to the psychologist who had, in addition to the interview, reviewed Plaintiff's records: Dr. Bostwick. The ALJ specifically cites Dr. Arnold's lack of access to claimant's records, and the fact that Dr. Arnold based his opinion on the "interview only" in the ALJ's decision to give "little weight" to his findings and conclusions. Tr. 27-28.

The record supports the ALJ's determination of credibility. Dr. Bostwick's report is more detailed than that of Dr. Arnold.  Dr. Bostwick submitted a six-page written report, comprised of a review of the claimant's background information, review of records, and discussion of how Dr. Bostwick determined his mental status. Tr. 346-352. In contrast, Dr. Arnold's evaluation is filled out in a standard form, with brief sentences and checked boxes. Tr. 361-368. Thus, while Dr. Arnold "assessed Mr. Schak's ability to do work activities" and Dr. Bostwick did not do so directly, Dr. Arnold's assessment of those activities is represented by check boxes on a form. Tr. 363.

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. Having reviewed the entire record, the Court finds that the ALJ's rejection of Dr. Arnold's conclusion concerning Plaintiff's mental limitations is grounded in specific and legitimate reasons supported by substantial evidence.

**B. Whether the ALJ Properly Rejected Claimant's Symptom Testimony**

Plaintiff further contends that the ALJ did not properly reject his symptom testimony regarding his physical impairments, noting that the ALJ is required to "state specifically why Mr. Schak's testimony regarding his limited ability to sit, stand, walk, lift, as well as his need to rest frequently throughout the day, was not credible and what facts in the record led to that conclusion." ECF No. 14 at 15, 16. Plaintiff contends that the ALJ merely made a boilerplate statement in rejecting his symptom testimony. ECF No. 14 at 16.

In order to find Schak's testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). An ALJ must perform a two-step analysis when deciding whether to accept a claimant's subjective symptom testimony. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996). The first step is a threshold test from *Cotton v. Bowen* requiring the claimant to "produce medical

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. Having reviewed the entire record, the Court finds that the ALJ's rejection of Dr. Arnold's conclusion concerning Plaintiff's mental limitations is grounded in specific and legitimate reasons supported by substantial evidence.

**B. Whether the ALJ Properly Rejected Claimant's Symptom Testimony**

Plaintiff further contends that the ALJ did not properly reject his symptom testimony regarding his physical impairments, noting that the ALJ is required to "state specifically why Mr. Schak's testimony regarding his limited ability to sit, stand, walk, lift, as well as his need to rest frequently throughout the day, was not credible and what facts in the record led to that conclusion." ECF No. 14 at 15, 16. Plaintiff contends that the ALJ merely made a boilerplate statement in rejecting his symptom testimony. ECF No. 14 at 16.

In order to find Schak's testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). An ALJ must perform a two-step analysis when deciding whether to accept a claimant's subjective symptom testimony. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996). The first step is a threshold test from *Cotton v. Bowen* requiring the claimant to "produce medical

evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991). "Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting [he] is malingering, the ALJ may reject the claimant's testimony regarding the severity of [his] symptoms only if [she] makes specific findings stating clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1283–84 (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993)). In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen,* 80 F.3d at 1284). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Plaintiff claims that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discrediting his subjective complaints. ECF

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

No. 14 at 16.  At the hearing, Plaintiff testified to a myriad of symptoms and limitations. He testified to being unable to watch a television program without getting up, Tr. 66; taking four or five naps throughout the day due to exhaustion, Tr. 66; that his legs would go numb, forcing him to elevate them, Tr. 69; being unable to bend down to tie his shoes, Tr. 69; and that it hurt to climb stairs, Tr. 70-71. However, the ALJ found that

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the symptoms and limitations described are not sufficiently supported by commensurate objective medical findings of abnormality consistent with an assessment of total disability under the Social Security Act.

Tr. 25. Thus, Mr. Schak's testimony met the *Cotton* test, but failed the credibility determination under the second step.

Contrary to Plaintiff's assertions, however, the ALJ provided a number of clear and convincing reasons for discounting the claimant's testimony. After the "boilerplate" statement that the claimant's self-described limitations were "not sufficiently supported by commensurate objective medical findings," the ALJ goes on to detail the medical findings that fail to establish "abnormality consistent with an assessment of total disability." Tr. 25. For example, the ALJ noted that the CT scan details normal renal activity, Tr. 25; noted that an MRI showed no significant pathology other than mild disc degeneration, Tr. 25; referred to a note from the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

claimant's treating physician's review of the radiology studies stating that there was "not much there," Tr. 25; and cited Dr. Daniel Dibble's pain management assessment finding that the claimant had reported "100% reduction in his left-sided, low back pain" after treatment, Tr. 26. The ALJ also refers to the findings of Peter Weir, M.D., who reported that the claimant' lumbar spine movements were "nearly normal," and that claimant exhibited "no pain behavior or discomfort, sitting comfortably throughout the interview and examination…[and] ambulating without difficulty to and from his vehicle in the parking lot." Tr. 27. Dr. Weir further reported that claimant had reported that his hearing issues had never really bothered him. Tr. 27. The ALJ's summary includes Dr. Weir's assessment that "although the claimant would experience difficulty communicating in situations involving background noise due to his mildly impaired hearing, the claimant's chronic lumbosacral strain, and absence of evidence supporting a diagnosis of arthritis, would pose no other functional limitations on the claimant." Tr. 27. The ALJ also places "great weight" on the opinions and conclusions of Minh Vu, M.D., who cited claimant's minimal evidence of disc disease and no evidence of neurological deficit or neuromuscular deficiencies. Tr. 28. Dr. Vu opined that claimant would be limited to no more than a wide range of light exertion. Tr. 28.

1    Testimony that contradicts a medical opinion is a clear and convincing
2    reason to find a claimant not credible. *Carmickle*, 533 F.3d at 1161. Here, the
3    claimant's testimony contradicted the bulk of the medical opinions and evidence.
4    As noted above, the medical evidence spoke to milder physical ailments than
5    Plaintiff testified to, and the ALJ appropriately noted that evidence. Having
6    thoroughly reviewed the record, the Court concludes that these reasons are
7    supported by substantial evidence.  The ALJ did not err in relying upon them as a
8    basis for not fully crediting Plaintiff's testimony about the disabling effects of his
9    impairments.

**C. Whether the ALJ Failed to Include Dr. Bostwick's Accepted Limitations in the Hypothetical**

Plaintiff contends that the ALJ's failure to include Dr. Bostwick's accepted limitations in the hypothetical question to the vocational expert is sufficient to require remand. Plaintiff argues that the ALJ afforded significant weight to Dr. Bostwick's evaluation—which stated that the claimant's attention, concentration, pace, and persistence were between low-average to moderately limited—yet did not include such limitations in the hypothetical question to the vocational expert. ECF No. 14 at 14. Defendant counters that Dr. Bostwick opined that Plaintiff's concentration, persistence, and pace varied from "low average" due to Plaintiff's choice, rather than mental impairment, and the ALJ is not required to account for

vocational limitations unrelated to Plaintiff's impairments, citing 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). Furthermore, Defendant contends, the ALJ limited Plaintiff to work involving one-to-three step instructions, and, as such, in fact accounted for Plaintiff's possible concentration difficulties in the residual functional capacity. ECF No. 16 at 11.

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant…." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value." *Embrey*, 849 F.2d at 423. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the Court is unpersuaded by Plaintiff's contention that the ALJ improperly failed to include Dr. Bostwick's limitations in the hypothetical. Dr. Bostwick's report notes that "when [claimant] applies himself more his attention and concentration are low Average, his memory is mildly impaired, and his

comprehension and retention of verbal information is within functional limits." Tr. 350. The report concludes that the variation between low Average and moderately impaired result from "choice rather than deleterious effects from a mental health disorder." Tr. 351. Thus, there is support from the record that, though claimant functions at low Average levels for attention and concentration, with a mildly impaired memory, his comprehension is within functional limits and that any variance can be accounted for by "choice." Accordingly, the record supports "specific and legitimate" reasons for discounting the claimant's testimony with respect to subjective limitations.

Furthermore, as Defendant argues, the ALJ limited Plaintiff to work involving one-to-three step instructions, indicating that the ALJ accounted for possible concentration difficulties in the residual functional capacity. Tr. 24 ("He would be unable to perform work that involves more than one-to-three step tasks, detailed work, or more than occasional changes in the work setting."). The ALJ included this limitation in the hypothetical to the vocational expert. Tr. 73.

Having thoroughly reviewed the record, the Court concludes that the ALJ appropriately reflected claimant's mental limitations in the hypothetical to the vocational expert.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

CONCLUSION

The ALJ's decision is based on substantial evidence and free of legal error. The record is fully developed and supports in its entirety the ALJ's denial of benefits.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** March 18, 2014.

THOMAS O. RICE
United States District Judge